WAUSAU HOSPITALS, INC., Ellet Drake, M.D., Julio C. Davila, M.D., and A. Ward Ford Memorial Institute, Inc., Respondents,

v.

DEPARTMENT OF HEALTH & SOCIAL SERVICES of the State of Wisconsin, Appellant. [Case No. 78–793.]†

STATE of Wisconsin and Department of Health & Social Services, Appellants,

v.

WAUSAU HOSPITALS, INC., Respondent. [Case No. 79–847.]†

Court of Appeals

*Nos. 78–793, 79–847. Argued January 16, 1980.— Decided March 18, 1980.*
(Also reported in 291 N.W.2d 602.)

† Petition to review denied.

602

For the appellants the cause was argued by *Robert W. Larsen,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the respondents there was a brief by *Tinkham, Smith, Bliss, Patterson, Richards & Hessert* and *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.,* of Wausau, and oral argument by *John E. Bliss.* [Case No. 78–793.]

For the respondent there was a brief by *Tinkham, Smith, Bliss, Patterson, Richards & Hessert,* and oral argument by *John E. Bliss,* all of Wausau. [Case No. 79–847.]

Before Donlin, P.J., Foley, J., and Dean, J.

DONLIN, P.J. The Wisconsin Department of Health and Social Services issued a declaratory ruling that Wausau Hospitals was required to obtain a certificate

of need under subchapter II of ch. 150, Stats.,[1] before resuming elective open heart surgery. The Hospital sought judicial review of this ruling. The circuit court determined that subchapter III of ch. 150, specialized hospital services program,[2] was applicable and that the Hospital's cardiac surgery program was deemed certified.[3] Therefore, the court concluded, a certificate of need was not required in order for the Hospital to resume elective open heart surgery. The court further ruled that subsequent review of the Hospital's cardiac surgery program could not be conducted for sixteen months from the date of the court's decision. The Department appeals this order.

[1] Subchapter II, §150.05(1), Stats., provides: "(1) No person may enter into an obligation in support of a project described in s. 150.02 or engage in activities described in that section unless the obligation or activities are authorized by a valid certificate of need."

[2] Subchapter III, §150.41, Stats., provides:

Definitions. In this subchapter:

(1) "Specialized services" are the specialized facilities, equipment and staff necessary:

(a) To perform heart catheterization studies or cardiac surgery.

(b) To perform radiation therapy treatment of cancer and other disease.

(c) For hemodialysis treatment of acute or chronic renal insufficiency.

(d) To perform kidney transplants.

(e) For the intensive care and management of high-risk maternal, high-risk fetal patients or high-risk neonatal patients.

(f) To perform computed tomography.

(2) "Certificate" means a written authorization by the department for an institution to provide specialized services.

[3] Section 1622m(1), ch. 29, Laws of 1977 provides:

(1) HOSPITAL SERVICE CERTIFICATION. All specialized services as defined in section 150.41(1) of the statutes, as created by this act, which are in operation on the effective date of this act and which substantially meet the requirements of sections 50.32 to 50.39 of the statutes shall be deemed certified for the purposes of subchapter III of chapter 150 of the statutes, as created by this act.

Subsequently, the Hospital moved into a new facility and the Department commenced a second action in the circuit court to enjoin the Hospital from performing elective open heart surgery at its new facility without first obtaining a certificate of need and to impose a civil forfeiture for every day of violation.[4] The circuit court dismissed this action based on its order in the prior case, which was already before this court. The Department appeals, and the two appeals have been consolidated.

These appeals do not involve questions of material fact. Rather, the interpretation and application of ch. 150 is in dispute. Specifically, the issue raised is the reviewability of the Hospital's cardiac surgery program. The interpretation of a statute is a question of law, which the court will independently resolve.[5] If it finds that the agency erroneously interpreted a provision of law, the court may set aside. or modify the agency's action to effectuate a correct interpretation.[6]

In its declaratory ruling, the Department concluded that the term "cardiac surgery" may be further categorized and its various components considered individually. Specifically, the Department concluded that elective, open heart, pump-assisted cardiac surgery, as a component of the Hospital's total cardiac surgery program, is a sufficient entity to be dealt with under ch. 150 "of and by itself." The Department found that the Hospital had, for a time, discontinued elective, open heart, pump-assisted cardiac surgery but continued emergency, open

---

[4] Subchapter II, §150.08, Stats., provides: "Any person who violates this subchapter or any rule adopted under this subchapter shall forfeit not less than $100 nor more than $1,000 for each such offense. Each day of violation constitutes a separate offense."

[5] *Milwaukee Fed. of Teachers, Local No. 252 v. WERC*, 83 Wis. 2d 588, 266 N.W.2d 314 (1978); *Wisconsin's Environ. Decade, Inc. v. PSC*, 79 Wis.2d 409, 256 N.W.2d 149 (1977).

[6] Section 227.20(6), Stats.

heart, pump-assisted cardiac surgery. Thus, the Department concluded that the elective, open heart, pump-assisted cardiac surgery program was not "in operation" within the meaning of the statute on the required date and was not deemed certified. The certification of emergency, open heart, pump-assisted cardiac surgery was not challenged by the Department.

On appeal, the Department contends that under subchapter II of ch. 150, resumption of the elective open heart surgery component is a substantial change in the health services offered by the Hospital.[7] As such, the Department argues, the performance of elective open heart surgery is within the scope of the certificate of need program and subject to the requirements of subchapter II. The Department asserts that the elective open heart surgery component is a separate entity from the cardiac surgery program, not exempted from such requirements or deemed certified. Finally, the Department contends that the circuit court had no authority to prohibit review of the program for sixteen months.

Chapter 150 does not define "cardiac surgery." It simply groups all cardiac surgery into a single category of specialized hospital services.[8] The legislature made no further differentiation. Where a word is used in a statute without an express definition, the legislature must intend courts to furnish its meaning.[9] In the ab-

---

[7] Subchapter II, §150.01(7), Stats., provides:

"Substantial change in health service" means the offering of a health service which was not offered on a regular basis in or through such a health care institution or health maintenance organization within the 12-month period prior to the time the services would be offered. "Substantial change in a health service" also means the deletion or substantial change in the scope or type of an existing health service provided by the health care institution or health maintenance organization.

[8] Section 150.41(1), Stats.

[9] *State ex rel. Chobot v. Circuit Court for Milwaukee Co.*, 61 Wis.2d 354, 212 N.W.2d 690 (1973).

sence of statutory definition, the common and generally understood meaning of a word should be applied in the construction of the statute.[10] In ascribing a meaning to the term "cardiac surgery," the term is to be considered in its context within the statutory section as a whole.[11]

Chapter 150 became effective July 1, 1977. It was designed to conserve and allocate health care resources, an area which had little prior regulation. Chapter 150 is divided into three subchapters. Subchapter I[12] contains definitions and general provisions. Subchapter II[13] sets forth a certificate of need program requiring that before anyone undertakes certain activities affecting the health care system, one must obtain a written authorization, certificate of need, to implement the project under review. These activities are generally related to capital expenditures, and the certificate of need is regarded as a cost-containment measure.

Subchapter III[14] is designed to reduce costly duplication of expensive equipment and services. It declares that there are six highly specialized and expensive hospital services requiring separate regulation. A hospital must obtain written authorization, a specialized services certificate, to provide such a service. Specialized services programs will be reviewed not only at the time they are established, like health services under subchapter II process, but every three to five years thereafter. Subchapter III further provides for decertification of these specialized services programs for lack of need or inadequate quality of care. These six specialized hospital services are defined in sec. 150.41(1), Stats., as "the special-

[10] *State (Board of Regents) v. City of Madison*, 55 Wis.2d 427, 198 N.W.2d 615 (1972).

[11] *Falkner v. Northern States Power Co.*, 75 Wis.2d 116, 248 N.W.2d 885 (1977).

[12] Sections 150.001–150.004, Stats.

[13] Sections 150.01–150.12, Stats.

[14] Sections 150.41–150.48, Stats.

ized facilities, equipment and staff" necessary to perform: (a) heart catheterization studies or cardiac surgery; (b) radiation therapy treatment; (c) hemodialysis treatment; (d) kidney transplants; (e) intensive care for high-risk maternal, fetal or neonatal patients; (f) computed tomography.

The legislature also enacted various transition provisions to guide the providers of health care services and the agency charged with the administration of ch. 150 during the transition period. Of principal importance to this case is sec. 1622m(1), ch. 29, Laws of 1977. Section 1622m(1) provides that all specialized services as defined in sec. 150.41(1), Stats., which are in operation on July 1, 1977, are deemed certified for the purposes of subchapter III of ch. 150.[15]

The circuit court correctly determined that this case is solely controlled by subchapter III of ch. 150, and the Hospital's cardiac surgery program, in its entirety, is deemed certified by virtue of the transition provisions contained in sec. 1622m(1), ch. 29, Laws of 1977.[16]

The definition of specialized services, and thus that of "cardiac surgery," is dependent upon capability. Specialized services are the specialized facilities, equipment, and staff necessary to perform the specialized service. The legislature enacted a definition section denoting specific areas of concern, yet broadly encompassing the

---

[15] Section 1622m(1), ch. 29, Laws of 1977, *supra* note 3.

[16] As indicated, subchapter III of ch. 150, Stats., and §1622m (1), ch. 29, Laws of 1977, are controlling in this case. Sections 150.01(7) and 150.02(1)(b), Stats., are not applicable. If a "substantial change" test was applicable to specialized services, it would concern changes in the objective criteria defining specialized services; *i.e.*, facilities, equipment, staff. In this case, the record establishes that no change occurred with regard to these criteria —the substantive cardiac surgery program has remained constant.

total program within each area. Considered in this context, the Department's construction cannot be maintained. Although any specialized service could be further categorized as elective or emergency, and although elective, open heart, pump-assisted cardiac surgery could be treated as a separate entity, we find no indication in the statute that this was intended nor does any rational basis appear for this construction.

Section 150.41, Stats., includes all the components of a cardiac surgery program within one category of specialized services. If the legislature had wished to treat elective, open heart, pump-assisted cardiac surgery as a separate entity and a specialized service in and of itself, it would have done so. Heart catheterization studies, for example, are components of cardiac care but are specifically treated as a separate entity requiring a certificate within the category that includes cardiac surgery. The same is true of the special services category encompassing high-risk maternal, fetal, or neonatal care. These services are certainly interrelated, and many hospitals provide more than one of them, yet the legislature indicated that each is to be considered separately under the statute.

The record reflects no basis for the Department's further categorization of cardiac surgery as elective and emergency. Uncontroverted evidence demonstrates that the same facilities, equipment, and staff are required to perform both elective and emergency cardiac surgery. No cardiac surgery program would be implemented, or supported, solely to perform emergency cardiac surgery as no institution could afford such a program. The record establishes that the Hospital operated a comprehensive cardiac surgery program. The elective pump-assisted portion of that program was temporarily suspended, but emergency, pump-assisted cardiac surgery, along with all other cardiac surgery procedures, continued to be performed. The record unquestionably establishes that the

Hospital always maintained the facilities, equipment, and staff necessary to perform all aspects of the comprehensive cardiac surgery program including elective, pump-assisted cardiac surgery.

We interpret the term "cardiac surgery" as used in ch. 150 to refer to a total cardiac surgery program as characterized by existing facilities, equipment, and staff. Thus, we conclude that the Hospital had a cardiac surgery program in operation pursuant to ch. 150 on the effective date of that act. By virtue of the transition provisions of sec. 1622m(1), that cardiac surgery program is deemed certified for purposes of ch. 150.

Chapter 150 was enacted to promote the conservation of health care resources and to maximize the effectiveness of health care expenditures.[17] The legislature was aware that ch. 150 instituted a new policy of health care regulation and would affect many programs already in operation in hospitals throughout Wisconsin. The legislature recognized that these programs would come within the regulatory scope of ch. 150, yet must be dealt with equitably.[18]

Of special concern were the specialized hospital services denoted in subchapter III. By defining specialized services as the existence of objective criteria, the legislature recognized that a hospital with the specialized facilities, equipment, and staff required to perform a specialized service like cardiac surgery was, in effect,

---

[17] Section 1624, ch. 29, Laws of 1977 provides:

It is the purpose of this act to conserve the limited health care resources of personnel and facilities in order to provide quality health care to all citizens, to minimize duplication of facilities and services, to encourage development of alternative methods of delivering health care and to maximize the effectiveness of expenditures made for health care.

[18] See generally Gertler and Jehl, Wisconsin Laws Limit Increases In Rates & Spending, 23 HEALTH IN WISCONSIN, No. 4, at 16 (1977).

operating the service. The legislature enacted transition provisions which use this objective definition to achieve an equitable transition. The legislature provided that if a hospital had certain specialized facilities, equipment, and staff in operation on the effective date, the specialized service was automatically certified.

The legislature further recognized the substantial investments these specialized services represent and the potential due process problems arising from their arbitrary cessation. In response, the legislature enacted sec. 150.45(6), Stats.,[19] decertified services phase-out provisions; sec. 1624k, ch. 29, Laws of 1977[20] decertified services cost-recovery provision; sec. 150.45(4), Stats.,[21] bypass of subchapter II capital expenditure certificate of need provision.

This interpretation is equitable, consistent with due process, and does not defeat the purpose of ch. 150, as

[19] Subchapter III, §150.45(6), Stats., provides: "The hospital shall be given a reasonable period of time, not to exceed one year, to phase out a specialized service."

[20] Section 1624k, ch. 29, Laws of 1977 provides:

The department of health and social services shall negotiate with the Wisconsin hospital association and associated hospital services, the modification of the contract under section 146.60 of the statutes to include as reimbursable operational costs, unamortized costs, outstanding debts, phase-out costs and equity associated with services which are decertified under subchapter III of chapter 150 of the statutes.

[21] Subchapter III, §150.45(4), Stats., provides:

If the department determines a service is temporarily not in full compliance with applicable standards and rules promulgated under this subchapter, but the service is needed, the department shall issue a warning to the certificate holder and work with the hospital to establish a plan of correction with a reasonable timetable. Failure to comply with such a timetable is grounds for decertification. Capital expenditures which are necessitated to meet certification standards shall automatically be considered nonsubstantive projects under subch. II, if the service or facility in question will be in full compliance with all applicable rules and standards upon completion of the project.

the Department contends. This interpretation is consistent with sec. 150.45. Although certain specialized services may have been certified on a summary basis, under sec. 150.45(5) they will be reviewed by the Department within one year of the promulgation of regulations, and may then be decertified if found lacking. Further, as the Hospital already has the requisite specialized facilities, equipment, and staff, the legislative goals of conservation and maximization of resources are not defeated. The legislature has provided for efficient transition while retaining control over specialized services through decertification. We affirm the circuit court's order vacating the final decision of the Department and finding that the Hospital had a specialized cardiac surgery service in operation on the effective date of ch. 150. This cardiac surgery program was deemed certified and is subject to review only under subchapter III of ch. 150.

The Department contends that the circuit court exceeded its authority when it prohibited review of the Hospital's cardiac surgery program for sixteen months. In light of our affirmance of the circuit court's determination that the Hospital's cardiac surgery program was deemed certified and is reviewable only under subchapter III of ch. 150, this issue is moot, and we decline to address it. Because there were no subchapter III regulations promulgated at the time of the judgment, a review could not have been conducted regardless of the circuit court's order. Now, the sixteen months have passed and if such regulations have been promulgated, we are unaware of them. We note that the Hospital's cardiac surgery program is subject to review, as previously discussed, within one year of the promulgation of such regulations, pursuant to sec. 150.45(6), as are all deemed certified specialized hospital services.

Prior to the enactment of ch. 150, Wausau Hospitals planned to build a new facility. The Hospital submitted its plans and obtained the approval then required by federal law to build this new facility. This federal approval included provisions for medicare and medicaid reimbursement at the new facility.

As ch. 150 had not yet been enacted, the new facility was not subject to any ch. 150 review. The Hospital was not required to obtain the subchapter II certificate of need for any of the services to be transferred and consolidated at its new facility. The federal review and approval the Hospital did obtain was different from ch. 150 review. The federal authorities acknowledged that the Hospital was operating a cardiac surgery program. They assured the Hospital that federal reimbursement for all aspects of that program, including the elective open heart program, would continue up to the time the Hospital moved into its new facility. The Hospital agreed that at that time this program would be subject to federal quality-of-care review.

In the interim, however, ch. 150 was enacted. The Hospital's total cardiac surgery service, along with any other existing specialized services, was deemed certified by virtue of the transition provisions of ch. 150. Thus, the hospital may operate its cardiac surgery program, including elective, open heart, pump-assisted cardiac surgery, at its new facility.

The Department asserts:

"It is important to remember that the Department does not here seek to terminate the cardiac surgery program at the Hospital. All it seeks is to be allowed to *review* it. It seeks to inquire whether the cardiac surgery program is needed. Any review will provide the Hospital and community full opportunity to demonstrate that a cardiac surgery program is needed in Wausau."[22]

[22] Brief for Appellant at 9, 10, case no. 79-847.

We agree with the Department's position in this. As we noted previously, the Hospital's specialized cardiac surgery program is subject to review by the Department, pursuant to sec. 150.45, Stats., as soon as appropriate regulations are promulgated. This review assesses area need for the service as well as accessibility and quality of care.

*By the Court.*—Orders affirmed.