The plaintiff sought a declaratory judgment[1] as to whether its purchase and use of certain equipment was subject to review and approval by the Alabama State Health Planning and Development Agency (SHPDA).
The plaintiff, Houston County Hospital Board, operates and does business as Southeast Alabama Medical Center (SAMC), a "health care facility" as defined in Ala. Code § 22-21-260 (7) (1975). The defendants are the executive director and members of the board of SHPDA.
The record reveals the following facts:
The plaintiff proposed to purchase a new EKG pressure recorder, a Honeywell VR-12, which would be used in the special procedures room at the hospital. This piece of equipment costs approximately $36,000 and would be used by anesthesiologists, radiologists, and cardiologists among others.
An expansion and renovation of the hospital was underway when the current administrator joined plaintiff hospital. Soon after his arrival, the administrator began the process of a formal application for approval from SHPDA. The administrator undertook this formal application as a "courtesy." Throughout the administrative proceedings, plaintiff has taken the position that SHPDA approval was not necessary and what plaintiff sought was clarification and confirmation of its right to purchase and use the equipment under a previously approved expansion plan.
On April 14, 1981, SHPDA approved the application, but on May 19, 1981, SHPDA, following a rehearing, reversed itself and entered an order denying plaintiff the right to purchase and use the equipment for certain cardiac diagnostic procedures. Plaintiff then filed its complaint seeking declaratory relief. The trial court ruled in plaintiff's favor, and we affirm.
The governing statutory provisions, Ala. Code §§ 22-21-260-277 (1975), became effective November 1, 1979. The statute seeks among other things to provide for review and regulation of capital expenditures by hospitals and other health care facilities. Section 22-21-263 declares that "new institutional health services" shall be *Page 1311 
subject to review and approval by SHPDA. For the purposes of §22-21-263, "new institutional health services" include among others the following condition:
 "Health services which are offered in or through a health care facility or health maintenance organization, and which were not offered on a regular basis in or through such health care facility or health maintenance organization within the 12-month period prior to the time such services would be offered."
§ 22-21-263 (a)(4).
This is the only condition of the four listed which could arguably apply in the instant case. Plaintiff maintains this condition does not apply because the equipment and contested use are merely an improvement, or at most, an expansion of previously existing services. Plaintiff further contends that approval for the purchase and use of the equipment was granted by the then existing and proper agency in 1974, and that approval is still in effect. Defendant, through able counsel, contends review and approval by SHPDA is mandated by §22-21-263.
The trial court entered an order declaring SHPDA "shall have no enforcement power or sanctions against the [plaintiff] hospital in this matter."
It is not so much the purchase of the equipment as the use of it to perform coronary arteriogram and left ventriculogram. procedures that defendant challenges, both at trial and on appeal. Defendant contends these two procedures constitute "new" services under § 22-21-263 and therefore require review and approval by SHPDA. Plaintiff contends these two procedures are facets of cardiac catheterization which has been offered and performed at plaintiff hospital "within the 12-month period prior to the time such services would be offered." § 22-21-263
(a)(4). Plaintiff established that the capability to perform those procedures existed at the plaintiff hospital. The position of plaintiff is that the capacity to provide the specific service within the 12-month period precludes agency review under § 22-21-263. Put another way, plaintiff argues these two procedures are not "new" because cardiac catheterization in general has been performed within the previous year, and that the two procedures specifically have been "offered" under the governing definitions.
In his findings of fact, the trial judge wrote:
 "Since at least 1977 cardiac catheterization has been performed in the plaintiff's hospital. Medical procedures involving the insertion of catheters into the cardiac chambers and great vessels by way of a vein or an artery have been regularly and routinely performed.
 "The defendants . . . contend that the terms cardiac catheterization is limited to procedures more precisely defined as coronary arteriograms and left ventriculograms. Although the Agency is vested with authority to promulgate rules and regulations setting forth the criteria for review, nothing in the statute or the regulations undertakes to give such a limited definition to the term `cardiac catheterization.'
 "The only definition from any federal or state health agency offered by any of the parties is as follows:
 "`Cardiac Catheterization services are invasive coronary diagnostic procedures performed in specially equipped areas of a general hospital. The technique involves introducing catheters into the cardiac chambers and great vessels by way of a vein or an artery or by direct needle puncture. It measures pressures to determine oxygen content, discovers an abnormal passage which the catheters may enter. The catheters may introduce indicator substances for the detection of cardiovascular shunts or valvular regurgitation, or for following hemodynamic movements in specific portions of the heart or great vessels. Cardiac Cathetherization is used to make observations and particularly to aid in the diagnosis and evaluation of various forms of heart disease.' [1980-84 Health Systems Plan, SHPDA] *Page 1312 
 "The evidence before the Court establishes and the Court finds that anesthesiologists and radiologists have regularly performed such `invasive coronary diagnosis procedures . . .' in specially equipped areas of the plaintiff's hospital.
 "The undisputed, stated evidence before the Court establishes and the Court finds that for a number of years the plaintiff has had in its facilities all necessary equipment to perform the procedures known as coronary arteriograms and left ventriculograms, with the purchase of the present duplicate equipment being a convenience to allow such to remain within the special procedures room. . . .
 "The Court further finds that the purchase and use of the questioned equipment does not constitute a new institutional health service, but rather is an improvement or expansion on an existing capability. The defendants and intervenors concede that the plaintiff may purchase and use the new equipment for any purpose other than coronary arteriograms or left ventriculograms. This position is untenable. It would mean that the EKG pressure monitor could be used by radiologists, anesthesiologists, surgeons, internists and all other medical specialists with the exception of cardiologists. The two items of equipment are no more than `state of the art' improvements or expansions. . . ."
The trial judge found purchase and use of the questioned equipment was not a "new service," and thereby not reviewable by SHPDA. Our review of the record convinces us more than ample evidence exists to support the trial judge's findings of facts. Furthermore, we find his conclusions of law eminently correct.
The plain language of the governing section states a new service is one that was "not offered on a regular basis in or through such health care facility . . . within the 12-month period prior to the time such services would be offered." §22-21-263 (a)(4). "To offer" is defined as meaning "that the health care facility . . . holds itself out as capable of providing, or as having the means for the provision of, specified health services." § 22-21-260 (17). The plaintiff hospital was "capable of providing" and had the means for performing the two specifically challenged procedures. As noted by the trial judge, "It is the fact of capability which controls and not whether the capabilities were actually being utilized." Wausua Hospitals, Inc. v. Department of Health andSocial Services, 95 Wis.2d 601, 291 N.W.2d 602 (Wis. 1980). Therefore, the purchase and use of the equipment for the challenged procedures falls outside the definition of "new services."
Furthermore, as noted by the trial judge, the two challenged procedures were within the definition of cardiac catheterization as defined by the state agency. No one disputes other procedures which were within the definition of cardiac cathetherization were performed at the plaintiff hospital within the 12-month period. The record reflected no basis for further categorization of cardiac catheterization with resulting new categories of coronary angiograms and left ventriculograms. The same facilities and equipment are utilized for these procedures, and the facilities and equipment are already available at the plaintiff hospital. See WausuaHospitals v. Department of Health and Social Services, supra.
We further note the existence of ample evidence to support the trial judge's finding that the plaintiff had received prior approval from the predecessor agency to SHPDA, and that approval was still effective. As noted by the trial judge:
 "The Court finds that in 1974 the plaintiff made an application for approval of a major expansion of the plaintiff's hospital. Under the existing law the then State Agency with jurisdiction issued an Assurance of Need. The 1974 application for the Assurance of Need incorporated a long range development plan which had been established by the plaintiff in close co-operation with the Agency personnel. The long range development plan provided for expenditures necessary to permit *Page 1313 
the plaintiff to have full cardiac catheterization capacity. The plaintiff obligated itself to implement the included portion of the long range plan prior to the termination date of the Assurance of Need issued by the Agency to it and, therefore, the certificate remained valid. Under these facts Agency review of the purchase and use of the equipment was unwarranted and Agency approval was and is unnecessary."
The former director of the predecessor agency testified the purchase and use of the equipment had been previously approved, and that approval was still valid. Despite testimony to the contrary, we find this a reasonable interpretation and adopt the trial court's finding on this issue.
Defendant raises an issue of estoppel on appeal. Under our Rules of Civil Procedure, estoppel is an affirmative defense, rule 8 (c), A.R.Civ.P., and as such must be specially, properly and sufficiently pleaded. Hendricks v. Blake, 291 Ala. 575,285 So.2d 82 (1973). Rule 57 states the Alabama Rules of Civil Procedure apply in declaratory judgments. Estoppel will not be considered for the first time on appeal. Carter v. Smith,402 So.2d 1017 (Ala.Civ.App. 1981). As the estoppel issue was not specially, properly and sufficiently pleaded, we need not address it.
This case is due to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.
[1] We make no decision on the propriety of seeking a declaratory judgment as a means of review of SHPDA actions as that issue is not before us.