Mobile Infirmary Association (the Infirmary) appealed to the trial court from an unfavorable declaratory ruling by the State Health Planning Agency Certificate of Need Review Board which held that the Infirmary's offering of rehabilitative services as a distinct unit was subject to certificate of need review and approval by the State Health Planning Agency (SHPA). The trial court subsequently reversed the SHPA ruling on the grounds that the SHPA erroneously interpreted and misapplied the law to the facts and thereby acted in an arbitrary and capricious manner. Defendants State Health Planning Agency, Knollwood Long Term Care Hospital (Knollwood), and Lakeshore Hospital appeal from this adverse decision by the trial court in favor of the plaintiff, the Infirmary.
The Infirmary, a subsidiary of Gulf Health, Inc., is a licensed 654-bed general acute care hospital. Prior to 1984, the Infirmary offered acute care services and also offered comprehensive rehabilitative services through what was known as the Rotary Rehabilitation Division of the Infirmary. In 1984, the rehabilitative services offered by the Infirmary were reorganized and transferred into a new and separate corporate entity, known as Rotary Rehabilitation Hospital (Rotary), which was created to serve as a subsidiary to Gulf Health, Inc., and to serve as a sister corporation to the Infirmary. As of this 1984 transfer, the record indicates that Rotary, not the Infirmary, operated as Gulf Health's full service rehabilitation hospital. The Infirmary, however, continued to provide rehabilitation services on a limited basis when patients were in transit between Rotary and the Infirmary. "In transit" refers to those times when a patient was either waiting at the Infirmary for a bed to become available at Rotary or when a patient was transferred from Rotary to the Infirmary for medical reasons other than those dealing with rehabilitation. In January of 1986, the Infirmary made plans to consolidate *Page 257 
its "existing" fragmented services into a 31-bed distinct part rehabilitation unit. On or about February 20, 1987, the Infirmary filed a declaratory petition with the SHPA and requested that the SHPA declare that consolidation of existing rehabilitative services into a distinct part unit was not reviewable under current certificate of need (CON) law in Alabama. Knollwood and Lakeshore Hospitals intervened in these proceedings and requested that the declaratory relief sought by the Infirmary be denied. On March 17, 1987, after a public hearing, the SHPA CON review board issued a declaratory ruling that the Infirmary was required to obtain a CON before it could establish a distinct part rehabilitative service.
The SHPA complains here that the trial court misapplied the law to the facts in this case and utilized an inappropriate standard of review. The standard of review in this case requires that the trial court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.
At the outset, a presumption of correctness attaches to an administrative board's decision because of its recognized expertise in a specific, specialized area. State HealthPlanning Resource Development Administration v. Rivendell ofAlabama, Inc., 469 So.2d 613 (Ala.Civ.App. 1985). Furthermore, judicial review is limited to questions of whether the agency exceeded its statutory authority, whether its decision was supported by substantial evidence, and whether its action was arbitrary. Alabama Board of Nursing v. Herrick,454 So.2d 1041 (Ala.Civ.App. 1984). Our review of the record convinces us that the SHPA acted within its statutory authority and made a reasonable decision based upon substantial evidence.
Additionally, the SHPA contends that the trial court erred when it held, contrary to the SHPA's declaratory ruling, that the establishment of a distinct part rehabilitation unit was not subject to review as a new institutional health service. Section 22-21-265, Ala. Code 1975 (1984 Repl.Vol.), requires that a CON be obtained from the SHPA prior to the offering of a new institutional health service. Thus, in order to determine whether CON review is necessary in the case at bar, we must determine whether the Infirmary's consolidation of its "existing" rehabilitative services into a 31-bed rehabilitation unit constituted a new institutional health service.
The definition of "new institutional health service" is set forth in § 22-21-263, Ala. Code 1975 (1984 Repl.Vol.). Sections22-21-263(a)(3) and (4) serve as thresholds of review in the instant case.
Section 22-21-263(a)(3) defines a new institutional health service as "a change in the existing bed capacity . . . through the addition, or [the] conversion of one or more beds, or the relocation of one or more beds from one physical facility to another." (Emphasis added.) The SHPA contends that the trial court improperly substituted its own definition of "changed existing bed capacity" for the SHPA's definition. The trial court based its definition upon the State Board of Health's Rules and Regulations, which state that a "change in existing licensed bed capacity constitutes a substantial change in a health care facility." The trial court erroneously concluded from this definition that a "change in existing bed capacity" under § 22-21-263(a)(3) had not occurred, since there was no change in the Infirmary's licensed bed capacity. Significantly, § 22-21-263(a)(3) makes no reference to "licensed bed capacity" or to the State Board of Health's Rules and Regulations. The SHPA determined, in accordance with § 22-21-263(a)(3), that the Infirmary changed its existing bed capacity, thus creating a new institutional service, when it converted 31 of its designated general acute care beds to 31 rehabilitation unit beds. This reasoning is supported by the State Health Plan (SHP), which defines conversion as a "change in the purpose of an existing bed to another purpose."
Section 22-21-263(a)(4) also serves as a threshold for review and reads as follows:
 "(4) Health services which are offered in or through a health care facility or health maintenance organization, and which were not offered on a regular basis in or through such health care facility or health maintenance organization within the 12 month period prior to the time such services would be offered." *Page 258 
The Infirmary contends that § 22-21-263(a)(4) does not apply because it has continuously offered rehabilitative services over a 30- to 40-year period. Specifically, the Infirmary contends that its distinct part rehabilitative unit is merely an improvement or expansion of existing capabilities. We find that contention without merit.
Section 22-21-263(a)(4) states that a new service is one that was "not offered on a regular basis in or through such health care facility . . . within the 12-month period prior to the time such services would be offered." "To offer" is defined as meaning "that the health care facility . . . holds itself out as capable of providing or as having the means for the provision of specified health services." § 22-21-260(15), Ala. Code 1975; Koch v. Houston County Hospital Board,432 So.2d 1309 (Ala.Civ.App. 1983). The record reveals that the Infirmary lacked the capability to offer rehabilitative services pursuant to § 22-21-260(15). The Infirmary planned to establish "a distinct part so-called integrated rehabilitative unit." According to the SHP, an integrated rehabilitative hospital must provide at least the following minimum rehabilitative services: "physical therapy, occupational therapy, speech and hearing therapy, recreation therapy, social and psychological services." State Health Plan, 1985-1988, at p. 270.
The annual reports submitted by the Infirmary indicate that the Infirmary did not provide the minimum services or possess the minimum capabilities necessary to maintain an integrated rehabilitation hospital. The 1986 annual report for the period of October 1, 1985, through September 30, 1986, shows that the Infirmary failed to provide occupational, speech, and hearing therapy. The 1985 annual report for the period of October 1, 1984, through September 30, 1985, also shows that the Infirmary failed to provide occupational therapy, medical rehabilitation, and psychological services. The record further reveals the provisions of the plan creating the Infirmary's rehabilitation unit. The provisions indicate that the Infirmary's rehabilitation unit would be operated as an extension of Rotary, with Rotary providing the nursing and therapy service and the Infirmary providing housekeeping, dietary, and other support services.
Finally, the SHPA contends that the trial court erred when it determined that the SHPA had misapplied the SHP to the facts of this case. The Infirmary argues, and the trial court found, that the SHPA had improperly used an amendment to the SHP as a threshold for review since prior to this amendment, according to the Infirmary, such consolidation was not reviewable under CON law. As stated above, two separate statutory thresholds of review, §§ 22-21-263(a)(3) and (4), authorized the CON review board to determine that the proposed rehabilitation unit was subject to its review. The rehabilitation amendment to the SHP, adopted on February 21, 1986, merely provided additional methodology for reviewing what was already subject to review under the CON statute.
Section 22-21-264(1)(a), Ala. Code 1975 (1984 Repl.Vol.), and Rules 410-1-6.02 and -6.03 expressly require that proposed new institutional health service be consistent with the State Health Plan. Furthermore, in its brief, the Infirmary supports the SHPA position when it states that "the SHP is not a rule or regulation but merely a set of criteria for use in processing applications which are otherwise reviewable." Therefore, the fact that the SHP was considered by the SHPA in determining that the Infirmary's proposed rehabilitation unit was subject to review was appropriate.
After reviewing the record, we find that the trial court misapplied the law to the facts in this case and utilized an inappropriate standard of review.
The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
BRADLEY, P.J., and HOLMES, J. concur. *Page 259