KENNEDY, Justice.
Defendant, Medical Center East, Inc. (“MCE”), appeals from a summary judgment in favor of the plaintiffs — Jefferson Tuberculosis Sanatorium, d/b/a Lakeshore Hospital (“Lakeshore”), and the State Health Planning and Development Agency (“SHPDA”) — and from an order permanently enjoining MCE from operating a rehabilitation service unit. We affirm.
The issue is whether MCE is required to obtain a certificate of need (“CON”) review under Code 1975, § 22-21-265(a), for the operation of a “distinct part unit” designed to provide comprehensive rehabilitation services within the existing MCE hospital facilities.
The dispositive facts of this case show that MCE, a general acute care hospital, renovated a floor of its hospital for the purpose of establishing a “distinct part unit” to provide comprehensive rehabilitation services for its patients. MCE maintains that it desired to establish a “distinct part unit” in order to receive cost reimbursement from the federal government under a prospective payment system. See 42 C.F.R. § 412.1(a) and § 412.25(a)(9) (1987). Under the federal regulations, the basic services necessary to establish a distinct part rehabilitation unit are; rehabilitative nursing, physical therapy, occupational therapy, and, as needed, speech therapy, social or psychological services, and/or or-thotic and prosthetic services, as well as the services of a part-time rehabilitation director. 42 C.F.R. § 412.29(c), (f) (1987). MCE was already providing nursing, physical therapy, occupational therapy, and speech therapy, as well as social services. However, these services were not consolidated into an organized rehabilitation unit within the hospital and were rendered on an informal basis throughout the hospital. The record indicates that MCE officials consistently referred to the rehabilitation unit as a “new service” during the planning stages for the unit. MCE had regularly referred some of its patients to other insti *65 tutions that provided comprehensive rehabilitation services, such as Lakeshore. MCE also wanted to increase its inpatient census and avoid the transfer of patients to outside rehabilitation centers. To facilitate this objective, MCE contracted with Health-South Rehabilitation Corporation to administer, market, staff, and equip the rehabilitation unit in accordance with governmental standards.
As part of the contract to establish the unit, MCE made significant renovations of its facilities and dedicated 20 patient rooms for use by rehabilitation patients. MCE reallocated 20 beds, which were originally medical/surgical beds already in existence within the hospital facility, to the rehabilitation unit.
Lakeshore and SHPDA sued MCE to enjoin the operation of the rehabilitation unit, alleging that MCE had violated the certificate of need law, as codified in Code 1975, § 22-21-260 et seq. The trial court entered a summary judgment for the plaintiffs and permanently enjoined the operation of the rehabilitation unit until MCE obtained SHPDA’s approval.
New institutional health services are subject to review under Code 1975, § 22-21-263, which provides as follows:
“(a) All new institutional health services which are subject to this article and which are proposed to be offered or developed within the state shall be subject to review under this article. For the purpose of this article, ‘new institutional health services’ shall include:
“(1) The construction, development, acquisition through lease or purchase or other establishment of a new health care facility or health maintenance organization; or
“(2) Any expenditure by or on behalf of a health care facility or health maintenance organization which, under generally accepted accounting principles consistently applied, is a capital expenditure in excess of $200,000.00 (indexed) for major medical equipment; in excess of $200,000.00 (indexed) for new annual operating costs; in excess of $600,000.00 (indexed) for any other capital expenditure by or on behalf of a health care facility or a health maintenance organization; or
“(3) A change in the existing bed capacity of a health care facility or health maintenance organization through the addition, or conversion of one or more beds, or the relocation of one or more beds from one physical facility to another; or
“(4) Health services which are offered in or through a health care facility or health maintenance organization, and which were not offered on a regular basis in or through such health care facility or health maintenance organization within the 12 month period prior to the time such services would be offered.
“(b) The four conditions of ‘new institutional health services’ listed in this section shall be mutually exclusive.”
(Emphasis added.)
MCE argues, inter alia, that under § 22-21-263(a)(3) the reallocation of 20 medical/surgical beds to the rehabilitation unit did not amount to a “change in the existing bed capacity” that would require CON review. We disagree. In State Health Planning Agency v. Mobile Infirmary Ass’n, 533 So.2d 255 (Ala.Civ.App.1988),[1] the Court of Civil Appeals rejected the same argument that MCE has presented to this Court. In that case the Infirmary, a general acute care hospital, made plans to consolidate its “existing” fragmented rehabilitation services into a 31-bed distinct part rehabilitation unit. The Court of Civil Appeals reasoned as follows:
“Section 22-21-263(a)(3) defines a new institutional health service as ‘a change in the existing bed capacity’ ... through the addition, or [the] conversion of one or more beds, or the relocation of one or more beds from one physical facility to another.
“The SHPA contends that the trial court improperly substituted its own def *66 inition of changed existing bed capacity for the SHPA’s definition. The trial court based its definition upon the State Board of Health’s Rules and Regulations, which state that a ‘change in existing licensed bed capacity constitutes a substantial change in a health care facility.’ The trial court erroneously concluded from this definition that a ‘change in existing bed capacity’ under § 22-21-263(a)(3) had not occurred, since there was no change in the Infirmary’s licensed bed capacity. Significantly, § 22-21-263(a)(3) makes no reference to ‘licensed bed capacity’ or to the State Board of Health’s Rules and Regulations. The SHPA determined, in accordance with § 22-21-263(a)(3), that the Infirmary changed its existing bed capacity, thus creating a new institutional service, when it converted 31 of its designated general acute care beds to 31 rehabilitation unit beds. This reasoning is supported by the State Health Plan (SHP), which defines conversion as a ‘change in the purpose of an existing bed to another purpose.’ ”
533 So.2d at 257. (Emphasis added.)
■ There being no genuine issues of material fact, we conclude that Lakeshore and SHPDA were entitled to a judgment as a matter of law, on the authority of Mobile Infirmary, supra, and Code 1975, § 22-21-263(a)(3). Although there are other issues raised under § 22-21-263(a)(2) and (4), we deem it unnecessary to address them, because we find Mobile Infirmary, supra, and § 22-21-263(a)(3) to be disposi-tive.
Therefore, the summary judgment and the injunctive order are due to be, and they are hereby, affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON and STEAGALL, JJ., concur.
JONES, J., concurs specially.

. The State Health Planning and Development Agency is referred to in 533 So.2d 255 as the "State Health Planning Agency” — "SHPA,” rather than "SHPDA.”