THIGPEN, Judge.
This case involves the suspension of a real estate salesman’s license.
The Alabama Real Estate Commission (Commission) suspended Tommy B. Simon’s real estate salesman’s license for six months and fined Simon $2,800 after determining that Simon violated Ala.Code 1975, § 34-27-36(a)(8)a, -36(a)(12), -36(a)(14), - 36(a)(21), and Commission Rule 790-X-3-.03(1).
Inter alia, these provisions state that it is a violation for a real estate salesman to fail, within a reasonable time, to properly account for or remit money coming into his possession which belongs to others; to pay or receive any rebate from any person in a real estate transaction; to accept a commission from any person except his qualifying broker for performing any act for which a license is required; or to misrepresent or fail to disclose to any lender or other interested party the true terms of a sale of real estate.
Simon appealed to the circuit court (trial court), which found that the Commission’s *1278 hearing was fair and impartial, and that its decision was factually sound and “not against the great weight of the evidence, accordingly, said decision [was] not arbitrary and baseless.” Hence, this appeal.
On appeal, Simon contends that the Commission’s decision was unreasonable and arbitrary, and that it was not supported by substantial evidence.
We note that an administrative board’s decision carries a presumption of correctness because of the board’s recognized expertise in a specific, specialized area. State Health Planning Agency v. Mobile Infirmary Association, 533 So.2d 255 (Ala.Civ.App.1988). “Furthermore, judicial review is limited to questions of whether the agency exceeded its statutory authority, whether its decision was supported by substantial evidence, and whether its action was arbitrary.” State Health Planning Agency, supra, at 257.
We initially note that, in essence, the Commission’s original complaint and final order refer to three incidences which led to sanctions being imposed against Simon.
According to the evidence, Simon, who had a good employment record as a real estate agent with Aronov Realty Company (Aronov) for more than seven years prior to this action, was the agent representing Carl and Henrietta Thomas in the sale of their house. First, the record revealed that Antonio Denson gave Simon a $500 cash binder for the purchase of the Thomases’ house and a $1,600 cashier’s check as an equity payment. Neither Simon nor Aronov could account for this $2,100 thereafter.
In its final order, the Commission found that Simon failed to submit these funds to Joe Watkins, his qualifying broker at Aro-nov. Simon testified that he gave the cash to an office secretary at Aronov, who noted that the binder was in cash. Testimony disclosed that this was proper office procedure, and that the secretaries rarely gave receipts for cash binders. Simon further testified that he later placed the cashier’s check in an overnight slot on that same secretary’s desk. This secretary, whom Simon recalled only as Barbara, no longer worked for Aronov, and she did not testify. Simon also testified that he and Denson unsuccessfully attempted to locate the cashier’s check before the hearing.
On cross-examination by Simon’s attorney, Charles Kelly, the Commission’s case investigator, testified as follows:
“Q. In [your] investigation, did you personally review Aronov’s trust account?
“A. No.
“Q. What about any of its ledgers on receipt of deposits or binders?
“A. Did I personally review them?
“Q. Yes.
“A. Did not.
[[Image here]]
“Q. Okay. Were you able to locate and talk to Barbara?
“A. Barbara?
“Q. That would be the — I believe my client [Simon] told you that he had given one of them, at least one of the payments to a girl named Barbara that was working at Aronov?
“A. I talked to Mr. Watkins about it, and he told me — and subsequently there was a letter in the file to the effect that this lady had departed Aronov before the time that Mr. Simon is supposed to have given her the money.
“Q. And did you hear his testimony in court today that he said that she was working there about that time?
“A. I heard what he said.
“Q. I believe it’s on the record.
“A. I don’t dispute it, Counselor.
“Q. Did you review the records to see if they were in fact — if she was in fact employed at that time?
“A. As far as any check of Aronov’s personnel records?
“Q. Yes.
“A. No, I did not.
[[Image here]]
“Q. Did you attempt to locate or track down a sixteen hundred dollar check? “A. We talked to Mr. Denson, and he said that he gave it to Mr. Simon. And the statement that I took from Mr. Simon, Mr. Simon said that he received it. *1279 And then when I talked to Mr. Watkins, he said that he had never seen such a check. And so thereby, Mr. Simon having said it, he received it, Mr. Denson testifying that he gave it to Mr. Simon and Mr. Watkins said I never received it, then that’s where it’s come before this commission today to determine who is lying.
“Q. We never have tried to locate that check, correct?
“A. No. We talked to Mr. Denson, and he said that he sent it. And Mr. Watkins — I’m sorry. Mr. Simon says that he got it.”
Testimony revealed that Kelly’s investigation disclosed no tangible evidence that Simon misappropriated the $2,100, but only that Simon received these funds, and that Watkins never received them.
Watkins testified that he never received the cash or the cashier’s check from anyone. He also testified that he personally does not review Aronov’s trust funds, and that it was the responsibility of the auditors to locate errors in the trust fund accounts. No evidence was presented as to whether such an audit was ever performed.
After carefully reviewing the record, we hold that the Commission’s finding of guilt regarding the charges against Simon resulting from this incident is not supported by substantial evidence and is arbitrary. Accordingly, the trial court’s decision as to this aspect of the Commission’s final order is due to be reversed.
The second incident concerned $500 in earnest money that the Thomases gave to Simon for a house they wanted to purchase. Again, the Commission found that Simon failed to remit these funds to Watkins.
Mrs. Thomas testified that she gave Simon a $500 binder check as earnest money, which later was cashed. She further testified, however, that Simon returned $500 to her by certified check as repayment for the binder check given to Simon by the Thom-ases.
Simon testified that he received the $500 binder check from Mrs. Thomas for the purchase of a house, which was listed with Aronov Associates, a different company from Aronov. Simon further testified that he converted the $500 binder check into a certified check, which he placed in an envelope, sealed, and gave to Jean Whitesell, the listing agent with Aronov Associates for that property. Simon testified that White-sell stated that there was a pending offer on that property, but she would retain the sealed envelope in case the pending offer failed.
Simon stated that the property later became unavailable to the Thomases, but he was late in returning the $500 certified check to the Thomases because he was out-of-town for an extended period. According to Simon, he received the sealed envelope containing the $500 certified check from Aronov Associates, converted it into a different certified check naming the Thomas-es as remittees, and returned that certified check to the Thomases.
Watkins testified that Mrs. Thomas telephoned him regarding the $500 binder check which she gave to Simon, stating that Simon had not returned the check. Watkins stated that he contacted Simon and instructed him to return the check.
On cross-examination, Watkins testified that, at the time of trial, Whitesell worked for him at Aronov, but that she had worked for Aronov Associates, possibly during the time in question. Watkins stated that he had no knowledge of the property which the Thomases wanted to purchase, but that if that property had been listed with Aro-nov Associates, then Aronov Associates would have been the proper company to receive the Thomases’ $500 earnest money. Whitesell was not called as a witness.
We again hold that the Commission’s finding of guilt as to the charge against Simon resulting from this incident is not supported by substantial evidence and is arbitrary. Accordingly, the decision of the trial court as to this aspect of the final order of the Commission also is due to be reversed.
The third incident arose from the • consummation (closing) of the sale of the *1280 Thomases’ house to Denson. In its final order, the Commission stated the following finding of fact:
“[B]ased on [Simon’s] representation that Aronov ... held the $2,100.00 earnest money, and that Aronov ... had given permission to [Simon] to do so because ... of another transaction which was allegedly ongoing with the [Thomas-es], [Simon] caused the closing attorney ... to issue a $990.00 check, representing part of the commission earned on the sale, payable to the [Thomases]. At approximately the same time, [Simon] asked for and received a $300.00 cash payment from the [Thomases], which said payment was not disclosed to any other parties or to the closing attorney.”
According to Simon, the Thomases learned at the closing that the amount of their sale proceeds had decreased from the expected amount and, therefore, they threatened to not complete the sale. Simon testified that he then called Watkins to request that the Thomases be reimbursed for the amount of the discrepancy, and that Watkins advised Simon to sign over to the Thomases a $990 commission check, which was intended as payment to Aronov. Simon, however, denied receiving a $300 cash payment from the Thomases at the closing.
The closing attorney testified that the closing took place in his office and, although he did not recall Simon making a phone call during that time, he testified that Simon was familiar with the office area and was welcome to use the facilities. According to the closing attorney, Simon directed that a $990 check be made payable to the Thomases.
Denson testified that he believed that Simon received either $200 or $300 in cash from Mr. Thomas at the closing. Also, Mrs. Thomas testified that, because of the sale proceeds discrepancy, Simon directed that a $990 check be made payable to the Thomases. She further testified that Simon then asked Mr. Thomas how much cash money he was carrying and, upon learning that he had $300, Simon said “that will be fine” and accepted that cash from Mr. Thomas in exchange for the $990 check.
Finally, Watkins testified that Simon never accounted to Aronov for a fee in this case, and that Aronov never received a commission.
Concerning the charge against Simon resulting from this incident, we cannot say that the Commission’s finding of guilt is not supported by substantial evidence, nor can we say that it is arbitrary. Accordingly, the trial court’s decision as to this aspect of the Commission’s final order is due to be affirmed.
Based on the foregoing, the decision of the trial court is due to be affirmed in part, reversed in part, and remanded with instructions for the trial court to enter an order consistent with this opinion. Nothing in this opinion should be construed as prohibiting the trial court from exercising its options as set out in Ala.Code 1975, § 34-27-38(d).
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
RUSSELL, J., concurs.
ROBERTSON, P.J., dissents in part.